IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL AARON JAYNE,                  )     Case No. 2:08-cv-02767-MSB
                                      )
            Plaintiff,                )     **ORDER**
                                      )
vs.                                   )
                                      )
TOM BOSENKO, et al.,                  )
                                      )
            Defendants.               )
_____ )

     This case was reassigned to the undersigned judge. (Dkt. # 13).  Plaintiff Michael Aaron Jayne, who is currently confined in the Klamath County Jail, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983.  (Dkt. #s 1, 17).  After reviewing Jayne's Application to Proceed *In Forma Pauperis* and Trust Account Statement (Dkt. #s 2, 9), the Court will grant Jayne's request to proceed *in forma pauperis*.  In addition, after reviewing the docket and record, the Court will deny Jayne's Motion for Preliminary Injunction (Dkt. #8) and Emergency Motion for Preliminary Injunction (Dkt. #12) as moot.  Finally, after screening Jayne's Complaint pursuant to 28 U.S.C. § 1915A, to the extent discussed below, the Court will order Defendants Abney, Anderson, Ashman, Bosenko, Champagne, Gonzalez, Heyde, Johnson, Joiner, Meek, Mitchell, Penland, and Van Buskirk to answer Jayne's Complaint as discussed in this order.  The Court will dismiss the remaining defendants without prejudice.

## I.      Application to Proceed In Forma Pauperis & Filing Fee

Jayne requests leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Dkt. #2).  Jayne has made the showing required by § 1915(a)(1),(2) and his request to proceed *in forma pauperis* will be granted.  (Dkt. #s 2, 9).  Pursuant to 28 U.S.C. § 1915(b)(1), Jayne is obligated to pay the statutory filing fee of $350.00 for this action.  An initial partial filing fee will not be assessed (due to Jayne's negative balance).  Jayne is required to make monthly payments of twenty percent of the preceding month's income credited to his account.  By separate order, the Court will direct the California Department of Corrections to collect these payments and forward them to the Clerk of the Court each time the amount in Jayne's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. 1915(b).

## II.     Motion for Preliminary Injunction

Months before this case was reassigned to me, Jayne filed a motion for preliminary injunction, requesting that the Court order Defendant Bosenko to end Jayne's "disciplinary diet" and to provide Jayne access to counsel (Dkt. #8), and an emergency motion for preliminary injunction, requesting that the Court "instruct Sheriff Tom Bosenko to immediately house Plaintiff in the [Shasta County] Jail until his trial [set for February 10, 2009." (Dkt. #12).  Jayne has since, however, filed a notice of change of address, reflecting that he is now housed in the Klamath County Jail in Klamath Falls, Oregon. (Dkt. #s 15, 17).  Thus, as it appears that Jayne's requested relief is no longer available, his motion for preliminary injunction and emergency motion for preliminary injunction are denied as moot.

## III.    Motion for Appointment of Counsel / 90-Day Extension

In both this case and an unrelated case assigned to Judge Lawrence K. Karlton, Case No. 2:07-cv-02522-LLK (GGH), Jayne has filed a motion to appoint counsel or in the alternative for an "emergency temporary injunction" or an extension of time to file a response to the defendants' motion for summary judgment. (Dkt. #18).  In support of his motion, Jayne states that he has been temporarily denied access to the law library at the Coffee Creek Correctional Facility in Wilsonville, Oregon during "intake" and thus will be

1    unable to timely respond to the defendants' motion for summary judgment.  There is no

2    pending motion for summary judgment in this case.  Nor does Jayne appear to request that

3    counsel be appointed to represent him in this case.  Therefore, the Court will deny Jayne's

4    motion as it is more appropriately directed to Judge Karlton in Case No. 2:07-cv-02522-LLK

5    (GGH).

6    **IV.    Statutory Screening of Prisoner Complaints**

7            The Court is required to screen complaints brought by prisoners seeking relief against

8    a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C.

9    § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised

10   claims that are legally frivolous or malicious, that fail to state a claim upon which relief may

11   be granted, or that seek monetary relief from a defendant who is immune from such relief.

12   28 U.S.C. § 1915A(b)(1), (2).

13   **V.     Background**

14           Jayne is currently housed at the Klamath County Jail in Klamath Falls, Oregon.  (Dkt.

15   #15).  From October 2007 until at least November 2008, when he filed his complaint, Jayne

16   was a pre-trial detainee at the Shasta County Jail in Redding, California, where the events

17   Jayne complains of allegedly occurred.  (Dkt #1 at 3).  In sum, Jayne claims that he was

18   subjected to "extreme methods of punishment" and denied access to counsel in violation of

19   his civil rights.  (*Id.*).

20           Jayne alleges that he was placed in "a safety isolation cell on numerous occasions for

21   up to 12 hours."  (*Id.*).  In addition, Jayne alleges that Defendant Ashman prohibited

22   visitation with his family (*id.* at 3, 8) and confiscated his clothing as punishment.  (*Id.* at 4).

23           Jayne also alleges that Ashman forced him to eat a "disciplinary loaf only twice a

24   day" for approximately one month by the time of his complaint, and that Ashman ordered

25   that Jayne remain on a disciplinary diet for several more months.  (*Id.*).  Jayne states that he

26   is provided "well below the national standard of a 2500-3000 calorie intake" and has lost

27   twenty-three pounds of weight as a result of this disciplinary diet.  (*Id.* at 9).  Jayne admits,

28

1   however, that this disciplinary measure was taken "as punishment for rule violations." (*Id.*

2   at 4).

3           Jayne contends that several conditions of his confinement at the Shasta County Jail

4   constituted "torture" and "cruel and unusual punishment" in violation of the Eighth

5   Amendment. (*Id.* at 1). He alleges that Ashman and Defendant Van Buskirk kept him

6   confined to his cell "everyday for over 13 months . . . only coming out of his cell 30 minutes

7   every other day." (*Id.* at 4). He also alleges that Bosenko kept "a bright light on in his cell

8   24 [hours] a day." (*Id.* at 7). And although he admits that the light has a "low" setting, he

9   alleges that it is still so bright that sleeping for 8 hours is impossible." (*Id.* at 7-8). Jayne

10  then alleges that Van Buskirk created "nothing less than torture" by covering jail windows

11  to block out natural light and create "sensory deprivation." (*Id.* at 7). Plus, Jayne alleges that

12  Bosenko, Ashman, and Van Buskirk forced him to wear "jail jap flaps," which are

13  "comparable to walking bare footed," causing pain in his lower back and feet. (*Id.* at 10).

14  Jayne further alleges that Bosenko and Defendants Barnes and Johnson have been indifferent

15  to his medical needs by refusing to provide his normal prescription of "Ativan" to treat his

16  "chronic anxiety, including mood disorder and depression and intermitent [sic] explosive

17  disorder." (*Id.* at 7). Moreover, Jayne alleges that Bosenko and Defendant "Barbara," the

18  Jail Medical Director, have been indifferent to his medical needs by requiring him to pay for

19  an eye exam. (*Id.* at 8).

20          Jayne further alleges that defendants have restricted his access to courts in several

21  ways. He alleges that Ashman and Van Buskirk denied him telephonic access to his

22  attorney, except during "his 30 minute time out every other day which normally is at night."

23  (*Id.* at 4). Jayne also alleges that Ashman read through and delayed the delivery of his

24  outgoing legal mail. (*Id.* at 5). Jayne further contends that Bosenko and Ashman have

25  implemented "draconian policies" by charging Plaintiff for legal supplies. (*Id.* at 9). In

26  addition, Jayne alleges that Bosenko, Ashman, Van Buskirk, and Defendants Meek,

27  Champagne, Gonzalez, Penland, Heyde, Mitchell, Joiner, Abney, Anderson, and Global Tel

28  Link engaged in recording and monitoring his calls to his attorney. (*Id.* at 5). This call

1  monitoring allegedly resulted in administrative discipline and referrals for criminal

2  prosecution. (*Id.*). Champagne, Van Buskirk, Ashman, Meek, Abney, Anderson, Mitchell,

3  Gonzalez, and Defendant User then allegedly conspired to "cover up and erase all recorded

4  calls." (*Id.* at 6). Moreover, Jayne alleges a second conspiracy involving Anderson,

5  Ashman, Van Buskirk, and Abney to transfer Jayne to the High Desert State Prison, where

6  Jayne would have "no access to his counsel." (*Id.*).

7       Finally, Jayne makes several miscellaneous claims: He alleges that Defendants Rogers

8  and Church "physically assaulted [him] by pushing him" (*id.* at 9), that Bosenko and Van

9  Buskirk engaged in "price gouging" by charging him high rates for collect calls (*id.* at 6), and

10 that Defendant Zufall "stole all of [Jayne's] family photographs and 2 books." (*Id.* at 5).

11 **VI.   Discussion**

12      42 U.S.C. § 1983 provides a cause of action against persons acting under color of state

13 law who have violated rights guaranteed by the United States Constitution. *See Buckley v.*

14 *City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139,

15 1146 (9th Cir. 1984). To state a valid claim for relief under § 1983, a plaintiff must allege

16 that he suffered a specific injury as a result of a defendant's specific conduct and show an

17 affirmative link between the injury and that defendant's conduct. *See Rizzo v. Goode*, 423

18 U.S. 362, 371-72, 377 (1976).

19      **A.    Pleading Standard**

20      *Pro se* pleadings are to be liberally construed. *Hains v. Kerner*, 404 U.S. 519, 520-21

21 (1972). Nonetheless, a *pro se* plaintiff must satisfy the pleading standard set forth in the

22 Federal Rules of Civil Procedure, which requires a "short and plain statement of the claim

23 *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In

24 addition, "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

25 While Rule 8 does not demand detailed factual allegations, "it demands more than an

26 unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct.

27 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by

28 mere conclusory statements, do not suffice." *Id.*

**B.     "All Defendants"**

Several of Jayne's claims are made against "all defendants."  For example, Jayne alleges that "all defendants are in and have been in a [sic] active conspiracy." (Dkt. #1 at 3).  First, **"**[t]o state a claim for a conspiracy . . . under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  Jayne does not allege facts supporting an overarching conspiracy.  Thus, Jayne's claim for conspiracy is dismissed without prejudice.  Second, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  Thus, the defendants–Abernathy, Baker, Craig, Global Tel Link, Marlar, Miller, Millis, and Viser–who are not specifically alleged to have caused one of the constitutional deprivations discussed below are dismissed without prejudice.

**C.     Pretrial Detainees**

Pre-trial detainees "are protected by the Fourteenth Amendment's Due Process Clause, as well as specific substantive guarantees of the federal Constitution, such as the First and Eighth Amendments." *Pierce v. County of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008).  Under the Due Process Clause, "detainees have a substantive due process right against restrictions that amount to punishment." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).  "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)).  In the first step of this inquiry, "the harm or disability . . . must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030 (citing *Bell*, 441 U.S. at 537).  To determine punitive intent, courts "first examine whether the restriction is based upon an express intent to inflict punishment." *Valdez*, 302 F.3d at 1045 (citing *Salerno*, 481 U.S. at 746).  Courts "next consider whether

- 6 -

1    punitive intent can be inferred from the nature of the restriction.  This determination . . . will

2    generally turn upon 'whether an alternative purpose to which [the restriction] may rationally

3    be connected is assignable for it, and whether [the restriction] appears excessive in relation

4    to the alternative purpose assigned [to it].'"  *Id.* (citing *Bell*, 441 U.S. at 539) (brackets in

5    original).

6         **D.    Express Punishment**

7         Jayne has alleged that certain defendants expressly intended to punish him for reasons

8    other than prison rule violations.  For instance, Jayne alleges that Ashman "ordered [Jayne's]

9    clothes to be restricted forever as punishment . . . [to] prevent him from recreating [sic]

10   exercising [sic] outside in inclement weather where he will freeze with no shirt."  (Dkt. #1

11   at 4).  Taken in the light most favorable to him, Jayne sufficiently alleges a harm greater than

12   any restriction on clothing inherent in confinement and an express intent to punish.

13        Jayne fails, however, to allege express punishment in his placement in a safety

14   isolation cell or on 24-hour lockdown.  Jayne alleges only that he has been intermittently

15   placed in a safety isolation cell and on 24 hour lockdown for over 13 months.  Jayne does not

16   allege specific conduct by any specific defendant that resulted in his placement in isolation

17   or on lockdown.  Thus, Jayne fails to state a claim with regard to express punishment through

18   isolation or lockdown.

19        **E.    Conditions of Confinement**

20        A district court may infer punitive intent from a detainee's conditions of

21   confinement, and in doing so may look to the standards developed under the Eighth

22   Amendment's prohibition against cruel and unusual punishment.  *See, e.g., Frost v.*

23   *Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) ("Because pretrial detainees' rights under the

24   Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment,

25   . . . we apply the same standards.").  In fact, a violation of the Eighth Amendment "will

26   always violate substantive due process."  *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121

27   n.11 (9th Cir. 2003).  In other words, "the guarantees of the Eighth Amendment provide a

28   *minimum standard of care* for determining [detainees'] rights."  *Id.* at 1120.

1       To state a claim against a prison official under the Eighth Amendment, a prisoner

2   must satisfy two requirements: (1) an objective requirement that "the deprivation alleged .

3   . . be sufficiently serious," and (2) a subjective requirement that the "prison official [ ]

4   have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)

5   (quotation omitted).

6       The objective requirement is met where the prison official's act or omission results

7   in "the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting

8   *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "Prison officials have a duty to ensure

9   that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

10  personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citing *Hoptowit v.

11  Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).  "The circumstances, nature, and duration of a

12  deprivation of these necessities must be considered in determining whether a

13  constitutional violation has occurred. 'The more basic the need, the shorter the time it can

14  be withheld.'" *Id.*

15      The subjective requirement is met where the prison official acts with "'deliberate

16  indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834 (quoting *Wilson v.

17  Seiter*, 501 U.S. 294, 302-03 (1991)).  A prison official acts with deliberate indifference

18  when he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at

19  837.  In other words, "the official must both be aware of facts from which the inference

20  could be drawn that a substantial risk of serious harm exists, and he must also draw the

21  inference." *Id.*

22      In his complaint, Jayne alleges facts sufficient to support claims for violations of

23  the Eighth and Fourteenth Amendments with regard to inadequate food, constant lighting,

24  inadequate clothing, and medical indifference to his mental health.  He fails, however, to

25  state claims with respect to outdoor exercise, isolation, sensory deprivation, and fees for

26  medical care.

27          i. Inadequate Food

28

- 8 -

1    "Adequate food is a basic human need protected by the Eighth Amendment."

2    *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (citing *Ray*, 682 F.2d at 1246),

3    *amended by* 135 F.3d 1318 (9th Cir. 1998). "While prison food need not be 'tasty or

4    aesthetically pleasing,' it must be 'adequate to maintain health.'" *Id.* (quoting *LeMaire v.*

5    *Maass*, 12 F.3d 1444, 1456 (1993)). The Supreme Court has stated that a disciplinary

6    diet providing less than 1,000 calories per day "might be tolerable for a few days and

7    intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 687 (1978); *see*

8    *also Foster v. Runnels*, 554 F.3d 807, 812-13 (9th Cir. 2009) (holding that an allegation

9    that 16 meals had been withheld over 23 days, leading to weight loss and dizziness was

10   sufficient to state a claim).

11       In his complaint, Jayne alleges that Ashman forced him to eat a "disciplinary loaf

12   only twice a day" for approximately one month and ordered that he remain on the diet for

13   several more. (Dkt. #1 at 4). Jayne also alleges that the diet provided insufficient

14   nutrition and resulted in "rapid weight loss." (*Id.* at 9). Those allegations are sufficient to

15   state a claim against Ashman under the Eighth and Fourteenth Amendments for a lack of

16   adequate food.

17           ii. Constant Lighting

18       "Adequate lighting is one of the fundamental attributes of 'adequate shelter'

19   required by the Eighth Amendment." *Keenan*, 83 F.3d at 1090 (citing *Hoptowit v.*

20   *Spellman*, 753 F.2d 779, 783 (9th Cir. 1985)). "Moreover, there is no legitimate

21   penological justification for requiring inmates to suffer physical and psychological harm

22   by living in constant illumination. This practice is unconstitutional." *Id.* (internal

23   quotation marks and brackets omitted).

24       In his complaint, Jayne alleges that Bosenko kept "a bright light on in his cell 24

25   [hours] a day," which, even on its "low" setting, was "so bright that sleeping for 8 hours

26   is impossible." (Dkt. #1 at 7-8). Those allegations are sufficient to state a claim against

27   Bosenko under the Eighth and Fourteenth Amendments for inadequate lighting in Jayne's

28   cell.

1          iii. Clothing

2          "The denial of adequate clothing can inflict pain under the Eighth Amendment."

3    *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Ray*, 682 F.2d at 1246).

4    The Ninth Circuit has "suggested that depriving an inmate of a jacket could violate the

5    Eighth Amendment under some weather conditions." *Johnson*, 217 F.3d at 732 (citing

6    *Walker*, 14 F.3d at 1421). Factors relevant to determining when a constitutional violation

7    occurs include the weather conditions at the time, any pain inflicted by the clothing

8    restriction, and the clothing that *is* in fact available to the inmate at the time. *Walker*, 14

9    F.3d at 1421.

10          Jayne alleges that Ashman restricted his clothing such that he was unable to

11   exercise "outside in inclement weather where he will freeze with no shirt." (Dkt. #1 at 4).

12   Jayne also alleges that Ashman, Bosenko, and Van Buskirk "forced [him] to wear"

13   footwear that caused him lower back and foot pain. (*Id.* at 10). These allegations are

14   sufficient to state a claim against Ashman, Bosenko, and Van Buskirk for inadequate

15   clothing.

16          iv. Indifference to Mental Health

17          A prison official violates the Eighth Amendment when the official acts with

18   "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429

19   U.S. 97, 104 (1976). "These requirements apply to physical, dental and mental health."

20   *Ray*, 682 F.2d at 1253. The medical need alleged "must be, objectively, 'sufficiently

21   serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501

22   U.S. 294, 303 (1991)). Factors indicating a serious medical need include: (1) whether a

23   reasonable doctor would consider the condition "worthy of comment or treatment," (2)

24   whether the condition "significantly affects an individual's daily activities," and (3)

25   whether the condition involves "chronic and substantial pain." *Lopez*, 203 F.3d at 1131.

26          To demonstrate deliberate medical indifference, a plaintiff must show both "a

27   purposeful act or failure to respond to a prisoner's pain or possible medical need and . . .

28   harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006)

- 10 -

1   (citation omitted).  "Prison officials are deliberately indifferent to a prisoner's serious

2   medical needs when they 'deny, delay or intentionally interfere with medical treatment.'"

3   *Lopez*, 203 F.3d at 1131.

4          In his complaint, Jayne alleges that he suffers from "chronic anxiety, including

5   mood disorder and depression and intermittent explosive disorder." (Dkt. #1 at 7).  He

6   also alleges that he is normally prescribed Ativan to treat this condition, but Barnes,

7   Bosenko, and Johnson refused to provide him with "this type of medication." (*Id.*).

8   Although Jayne does not allege that he has been denied *all* types of medication, drawing

9   all inferences in his favor at this stage Jayne's allegations are sufficient to state a claim

10   against Barnes, Bosenko, and Johnson under the Eighth and Fourteenth Amendments for

11   inadequate medical care.

12                    v. Confinement and Outdoor Exercise

13          "[E]xercise has been determined to be one of the basic human necessities protected

14   by the Eighth Amendment, and a long-term deprivation of outdoor exercise for inmates is

15   unconstitutional." *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (internal

16   quotation marks and citations omitted); *see Toussaint v. Yockey*, 722 F.2d 1490, 1492-93

17   (9th Cir. 1984) (finding "a substantial constitutional question" where inmates were

18   confined to cells for up to 23 ½ hours a day for over one year).  "[O]ther [circuits] have

19   held that detainees . . . are ordinarily entitled to daily exercise, or five to seven hours of

20   exercise per week, outside their cells." *Pierce*, 526 F.3d at 1212 (citing *Campbell v.*

21   *Cauthron*, 623 F.2d 503, 507 (8th Cir. 1980); *Housley v. Dodson*, 41 F.3d 597, 599 (10th

22   Cir. 1994)).

23          Here, Jayne alleges that he has been subject to a lockdown for "over 13 months . . .

24   only coming out of his cell 30 minutes every other day." (Dkt. #1 at 3).  Although the

25   Ninth Circuit has not identified "a specific minimum amount of weekly exercise that must

26   be afforded to detainees," Jayne's allegation that he receives less than three hours of

27   exercise per week certainly "does not give meaningful protection to this basic human

28   necessity." *Pierce*, 526 F.3d at 1212.  Jayne therefore states a claim under the Eight and

1    Fourteenth Amendments for denial of adequate exercise.  Because he fails to allege

2    specific conduct by any defendant and injunctive relief is no longer available, however,

3    the Court will dismiss the claim without prejudice but with leave to amend to name a

4    responsible defendant or defendants.  *See Leer*, 844 F.2d at 633.  Jayne may, within forty-

5    five (45) days, submit an amended complaint on the form provided with this Order.  He

6    must clearly designate on the face of the document that it is the "First Amended

7    Complaint."  The amended complaint must be retyped or rewritten in its entirety on the

8    form provided with this Order and may not incorporate any part of the original Complaint

9    by reference.  An amended complaint entirely supersedes the original complaint.  *Ferdik*

10   *v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat

11   an original complaint as nonexistent.  *Id.*  Any cause of action that was raised in the

12   original complaint is waived if not raised in a first amended complaint.  *King v. Atiyeh*,

13   814 F.2d 565, 567 (9th Cir. 1987).

14                    vi. Isolation

15          "Confinement in a prison or in an isolation cell is a form of punishment subject to

16   scrutiny under Eighth Amendment standards."  *Hutto*, 437 U.S. at 685.  At the same time,

17   "punitive isolation is not necessarily unconstitutional, but it may be, depending on the

18   duration of the confinement and the conditions thereof."  *Id.* at 685-86 (internal quotation

19   marks and citation omitted).

20          In his complaint, Jayne alleges that he has been placed in a "safety isolation cell . .

21   . on numerous occasions for up to 12 hours."  (Dkt. #1 at 3).  Jayne does not allege,

22   however, that he was kept in an isolation cell for prolonged periods of time or that

23   particular conditions of the cell(s) he was kept in subjected him to harm exceeding the

24   inherent discomforts of confinement.  Moreover, Jayne fails to allege specific conduct by

25   any defendant that resulted in his isolation.  Therefore, Jayne fails to state a claim under

26   the Eighth and Fourteenth Amendments with respect to his intermittent confinement in a

27   "safety isolation cell."

28                    vii. Sensory Deprivation and Natural Sunlight

- 12 -

1   "Sensory deprivation or excessive limitation of activity may constitute an Eighth

2   Amendment violation." *Baumann v. Ariz. Dept. of Corr.*, 754 F.2d 841, 846 (9th Cir.

3   1985) (citation omitted).  Here, Jayne's only allegation in support of his claim that he has

4   been subjected to "sensory deprivation" is that Bosenko and Van Buskirk ordered that

5   Jayne's jail windows be covered, preventing natural sunlight from entering his cell.  (Dkt.

6   #1 at 7).  Jayne does not allege the complete denial of light or any other aspect of sensory

7   deprivation that would exceed the inherent discomforts of confinement.  Thus, Jayne fails

8   to state a claim under the Eighth and Fourteenth Amendments for "sensory deprivation."

9                              viii. Fees for Medical Care

10   Charging prisoners for medical services does not constitute deliberate indifference

11   unless the fees charged are prohibitively high.  *Shapley v. Nev. Bd. of State Prison*

12   *Comm'rs.*, 766 F.2d 404, 408 (9th Cir. 1985) (per curiam).  In his complaint, Jayne

13   alleges that Bosenko and "Barbara" required that he pay for an eye exam and for glasses.

14   (Dkt. #1 at 8).  Jayne does not allege that this charge prevented him from pursuing

15   medical care, nor does he allege that the fees negatively impacted his medical care.  Thus,

16   Jayne fails to state a claim against Bosenko or "Barbara" under the Eighth and Fourteenth

17   Amendments for inadequate medical care.

18   **F.     Other Restrictions**

19                              i. Excessive Force

20   "[T]he Fourth Amendment sets the 'applicable constitutional limitations' for

21   considering claims of excessive force during pretrial detention."  *Gibson v. County of*

22   *Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (quoting *Pierce v. Multnomah County*, 76

23   F.3d 1032, 1043 (9th Cir. 1996)).  "[D]etermining whether a defendant officer's use of

24   force was 'reasonable' under the Fourth Amendment 'requires a careful balancing of the

25   nature and quality of the intrusion on the individual's Fourth Amendment interests against

26   the countervailing government interests at stake.'"  *Gibson*, 290 F.3d at 1197 (quoting

27   *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "Not every push or shove, even if it may

28   later seem unnecessary in the peace of a judge's chambers, violates the Fourth

1    Amendment."  *Graham*, 490 U.S. at 396 (internal quotations marks and citations omitted)

2    Jayne alleges that Church and Rogers "physically assaulted [him] by pushing

3    him," causing Jayne continuing physical pain.  (Dkt. #1 at 9).  Jayne, however, does not

4    allege any facts concerning the circumstances surrounding this incident.  Nor does Jayne

5    allege that this alleged use of force was unreasonable.  Accordingly, Jayne fails to state a

6    claim against Church or Rogers under the Fourth Amendment for excessive use of force.

7                              ii. Visitation

8    Pre-trial detainees do not have a right to unfettered visitation.  *See Block v.*

9    *Rutherford*, 468 U.S. 576, 585-89 (1984) (upholding a blanket prohibition on contact

10   visitation for pre-trial detainees as reasonably related to a legitimate government interest

11   in security).  "[T]here is no constitutional right of 'access to a particular visitor.'"

12   *Keenan*, 83 F.3d at 1092 (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61

13   (1989)).

14   In his complaint, Jayne alleges that Ashman "has forced [him] to have no visitation

15   with his family."  (Dkt. #1 at 3).  Jayne does not allege that he has been denied visitation

16   altogether, or that this restriction was accompanied by an express intent to punish.  Thus,

17   Jayne fails to state a claim against Ashman under the Fourteenth Amendment for a

18   restriction on visitation.

19                              iii. Collect Call Rates

20   "Prisoners have a First Amendment right to telephone access, subject to reasonable

21   security limitations."  *Keenan*, 83 F.3d at 1092 (citing *Strandberg v. City of Helena*, 791

22   F.2d 744, 747 (9th Cir. 1986)).  They do not, however, have a right to a specific rate for

23   their telephone calls.  *See Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) (per

24   curiam).

25   Here, Jayne alleges that Bosenko and Global Tel Link engaged in "price gouging"

26   on his collect calls.  (Dkt #1 at 6).  He does not, however, allege that this resulted in

27   prices so high that he has been denied telephone access.  Thus, Jayne fails to state a claim

28

1   against Bosenko and Global Tel Link under the First Amendment for denial of telephone

2   access.

3             iv. Deprivation of Property

4             "An unauthorized intentional deprivation of property does not give rise to a

5   violation of the Due Process Clause if the state provides an adequate postdeprivation

6   remedy." *Hudson v. Palmer*, 468 U.S. 517, 533 n.14 (1983).  Here, Jayne alleges that

7   Zufall stole his personal property from his cell.  (Dkt. #1 at 5).  As in *Hudson*, the state

8   provides an adequate postdeprivation remedy in the form of common-law causes of action

9   that can provide compensation for his property loss.  *See Barnett v. Centoni*, 31 F.3d 813,

10  816-17 (9th Cir. 1994) ("California law provides an adequate post-deprivation remedy for

11  any property deprivations.") (citing Cal. Gov't Code §§ 810-895).  Additionally, Jayne

12  indicates that the jail had a grievance procedure, and he does not allege any deficiency in

13  this remedy.  (*Id.*, p.2).  Nor does Jayne allege that Zufall acted "pursuant to some

14  established procedure." *Zimmerman v. City of Oakland*, 255 F.3d 734, 738 (9th Cir.

15  2001).  Thus, Jayne fails to state a claim under the Fourteenth Amendment for deprivation

16  of personal property.

17            v. Legal Call Monitoring

18            Jayne alleges that Abney, Anderson, Ashman, Bosenko, Champagne, Gonzalez,

19  Heyde, Joiner, Meek, Mitchell, Penland, and Van Buskirk recorded and monitored his

20  calls to his attorney.  (Dkt. #1 at 5).  The Fourth Amendment is not triggered unless the

21  state intrudes into an area "in which there is a 'constitutionally protected reasonable

22  expectation of privacy.'" *United States v. Van Poyck*, 77 F.3d 285, 290 (9th Cir. 1996)

23  (quoting *New York v. Class*, 475 U.S. 106, 112 (1986)).  Prisoners generally have "no

24  expectation of privacy in [telephone] calls." *U.S. v. Monghur*, 576 F.3d 1008, 1011 (9th

25  Cir. 2009) (citing *Van Poyck*, 77 F.3d at 291 ("[A]ny expectation of privacy in outbound

26  calls from prison is not objectively reasonable and . . . the Fourth Amendment is therefore

27  not triggered by the routine taping of such calls.")); *U.S. v. Faulkner*, 439 F.3d 1221 (10th

28  Cir. 2006) ("It is generally accepted that a prisoner who places a call from an institutional

phone with knowledge that the call is subject to being recorded has impliedly consented to the recording.") (citations omitted).

A prisoner may, however, have an expectation of privacy in a properly made call to his attorney. *See Van Poyck*, 77 F.3d at 291 n.9 (stating that the court's analysis "does not apply to 'properly placed' telephone calls between a defendant and his attorney"). In addition, the recording of Jayne's calls to his attorney may violate the Federal Wiretap Act, 18 U.S.C. §§ 2510-22. *See id.*, 77 F.3d at 291. Accordingly, Jayne's allegations are sufficient at this time to state a claim against the above defendants for the monitoring and recording of his calls.

### G.     Access to Courts

To state a denial of access to the courts claim, a prisoner "must identify a 'nonfrivolous,' 'arguable' underlying claim" that the prisoner has been or will be unable to pursue properly because the defendant's actions have denied the prisoner meaningful access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (quoting *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996)). Here, Jayne alleges facts sufficient to state a claim for a violation of his constitutional rights with regard to restrictions placed on his calls to his attorney and his retaliatory transfer. He fails to state a claim, however, with regard to inspection of his legal mail, fees for legal supplies, and the monitoring and recording of his calls.

#### i. Restricted Telephone Access

Jayne alleges that Ashman and Van Buskirk denied him telephonic access to his attorney, except during "his 30 minute time out every other day which normally is at night." (Dkt. #1 at 4). The Ninth Circuit has "recognized detainees' and prisoners' first amendment right to telephone access . . . . subject to rational limitations in the face of legitimate security interests fo the penal institution." *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (quotation marks and citation omitted); *see also Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (indicating that a prisoner may be deprived of access to the courts because he was denied telephone access to his attorney). In addition,

1   "a prisoner's right of access to the courts includes *contact* visitation with his counsel."

2   *Ching v. Lewis*, 895 F.2d 608, 610 (9th Cir. 1990) (emphasis added).  Viewed in the light

3   most favorable to him, Jayne alleges that Ashman and Van Buskirk have largely denied

4   him access to his attorney, telephonic or otherwise.  That allegation is sufficient to state a

5   claim against Ashman and Van Buskirk under the First Amendment for denial of access

6   to the courts.

7                              ii. Legal Mail Inspection

8        Jayne alleges that Ashman read through and delayed the delivery of his outgoing

9   mail "to the courts . . . . to [ ] public officials and individual judges . . . ."  (Dkt. #1 at 5).

10       "The Supreme Court ha[s] held that [legal] mail may be opened in the presence of

11  the addressee and that prison officials [can] require both that the letters be specially

12  marked with the name and address of the attorney and that the attorney communicate first

13  with prison officials."  *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981) (citing

14  *Wolff v. McDonnell*,  418 U.S. 539, 575-77 (1974)).  "It is an open question in the Ninth

15  Circuit whether reading legal mail *outside* of the prisoner's presence is clearly established

16  law."  *Sherman*, 656 F.2d at 528 (emphasis added); *but see Stevenson v. Koskey*, 877 F.2d

17  1435, 1441 (9th Cir. 1989) (holding that an isolated instance or occasional opening of

18  legal mail outside of an inmate's presence does not rise to the level of a constitutional

19  violation).  In any event, "[m]ail from the courts, as contrasted to mail from a prisoner's

20  lawyer, is not legal mail."  *Keenan*, 83 F.3d at 1094 (citation omitted).  Jayne does not

21  allege that Ashman opened any mail from his attorney outside of his presence.  Nor does

22  he allege any actual injury related to any delays in the delivery of his mail to the courts.

23  *See id.* ("[T]o state an access to the courts claim that concerns neither the inadequacies of

24  the law library nor the lack of assistance of a person trained in law, an inmate must

25  demonstrate 'actual injury,' i.e., 'some specific instance in which an inmate was actually

26  denied access to the courts.'") (quoting *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.

27  1989)).  Accordingly, Jayne fails to state a claim against Ashman for denial of access to

28  the court relating to either the opening of his mail or any delay in the delivery of his mail.

iii. Fees for Legal Supplies

Jayne alleges that Ashman and Bosenko have implemented "draconian policies" by charging Plaintiff for legal supplies. (Dkt. #1 at 9). He does not, however, allege an actual injury related to the fees charged for legal supplies, as he does not allege that they denied him access to the courts. *Keenan*, 83 F.3d at 1094. Therefore, Jayne fails to state a claim against Ashman and Bosenko for denial of access to the courts relating to legal supplies.

iv. Retaliatory Transfer

Prisoners may not be transferred in retaliation for exercising their First Amendment rights. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Here, Jayne alleges that Abney, Anderson, Ashman, and Van Buskirk (1) "maliciously transferr[ed] him to [the] High Desert State Prison for almost 2 months," (2) because Jayne (3) had attempted to exercise his First Amendment right to contact visitation and telephonic access to his counsel, and that (4) the transfer resulted in "no access to his counsel." (Dkt. #1 at 6). There is no indication, as yet, whether the transfer reasonably advanced a legitimate correctional goal. All told, Jayne's allegations are sufficient to state a First Amendment retaliation claim against Abney, Anderson, Ashman, and Van Buskirk.

**VI.   Relief Requested**

When an inmate seeks injunctive or declaratory relief concerning conditions at a particular prison where he is housed, his claims for such relief become moot when he is no longer subjected to those conditions. *Nelson v. Heiss*, 277 F.3d 891, 897 (9th Cir. 2001). Jayne is no longer housed at the Shasta County Jail. (Dkt. #s 15, 17). Thus, Jayne's requests

for injunctive relief are denied as moot.  This action shall proceed as one for monetary damages only.

## VII.   Warnings

### A.   Address Changes

Jayne must file and serve a notice of a change of address in accordance with Rule 83-182(f) and 83-183(b) of the Local Rules of Civil Procedure.  Jayne must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.   Copies

Jayne must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5-133(d)(2).  Failure to comply may result in the filing being stricken without further notice to Jayne.

### C.   Possible Dismissal

If Jayne fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**Accordingly,**

**IT IS HEREBY ORDERED THAT:**

(1)     Plaintiff's Application to Proceed *In Forma Pauperis* is **granted** pursuant to 28 U.S.C. § 1915(a)(1).

(2)     Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action pursuant to 28 U.S.C. § 1915(b)(1).  All fees must be collected and paid in accordance with this Court's order to the California Department of Corrections, which will be filed concurrently with this Order.

(3)     Plaintiff's Motion for Preliminary Injunction (Dkt. #8) is **denied** as moot.

(4)     Plaintiff's Emergency Motion for Preliminary Injunction (Dkt. #12) is **denied** as moot.

(5)    Plaintiff's Motion to Appoint Counsel and Motion for 90-Day Extension (Dkt. #18) is **denied** without prejudice.

(5)    Plaintiff's isolation, confinement, outdoor exercise, sensory deprivation, medical fees, excessive force, visitation, collect call rate, deprivation of property, legal mail inspection, legal supply fees, and legal call monitoring claims are **dismissed** without prejudice.  Defendants Abernathy, Baker, Craig, Global Tel Link, Marlar, Miller, Millis, and Viser are also **dismissed** without prejudice.

(6)    Defendant Bosenko shall answer Plaintiff's claims regarding medical indifference, inadequate lighting, inadequate clothing, and the recording and monitoring of Plaintiff's telephone calls to his attorney.  Defendant Ashman shall answer Plaintiff's claims regarding inadequate food, inadequate clothing, denial of access to counsel, retaliatory transfer claims, and the recording and monitoring of his telephone calls to his attorney. Defendant Van Buskirk shall answer Plaintiff's claims regarding inadequate clothing, denial of access to counsel, retaliatory transfer claims, and the recording and monitoring of Plaintiff's calls to his attorney.  Defendants Barnes and Johnson shall answer Plaintiff's medical indifference claim.  Defendants Abney and Anderson shall answer Plaintiff's claims regarding retaliatory transfer and the recording and monitoring of Plaintiff's calls to his attorney.  Defendants Champagne, Gonzalez, Heyde, Joiner, Meek, Mitchell, and Penland shall answer Plaintiff's claims regarding the recording and monitoring of Plaintiff's calls to his attorney.

(7)    Plaintiff is granted leave to amend his complaint to state claim for denial of adequate exercise against a particular defendant or defendants.  Within forty-five (45) days of the date of this Order, Plaintiff may submit an amended complaint on the form provided with this Order.  Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint."  The amended complaint must be retyped or rewritten in its entirety on the form provided with this Order and may not incorporate any part of the original Complaint by reference.  An amended complaint entirely supersedes the original complaint.

1   (8)    The Clerk of the Court shall send Plaintiff a Prisoner Complaint form along

2   with this order.

3   (8)    The Clerk of the Court shall send Plaintiff a service packet including the

4   Complaint (Dkt. #1), this Order, a Notice of Submission of Documents form, an instruction

5   sheet, and copies of summons and USM-285 forms for each Defendant listed above in

6   number 2.

7   (9)    Within **30 days** of the date of filing of this Order, Plaintiff shall complete and

8   return to the Clerk of the Court the Notice of Submission of Documents.  Plaintiff shall

9   submit with the Notice of Submission of Documents: a copy of the Complaint, a copy of this

10   Order, a completed summons, and a completed USM-285 for each Defendant listed above

11   in number 2.

12   (10)    Plaintiff shall not attempt service on Defendants and must not request waiver

13   of service.  Once the Clerk of the Court has received the Notice of Submission of Documents

14   and the required documents, the Court will direct the United States Marshal to seek waiver

15   of service from each Defendant or serve each Defendant.

16   (11)    **If Plaintiff fails to return the Notice of Submission of Documents and the**

17   **required documents within 30 days of the date of filing of this Order, the Clerk of the**

18   **Court shall, without further notice, enter a judgment of dismissal of this action without**

19   **prejudice.  *See* Fed. R. Civ. P. 41(b).**

20

21   DATED this 20th day of November, 2009.

22

23   /s/ Marsha S. Berzon
    MARSHA S. BERZON
24   United States Circuit Judge, sitting by designation

25

26

27

28

- 21 -