# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL AARON JAYNE, | Case No. 2:08-cv-2767-MSB |
| Plaintiff, | |
| vs. | **ORDER** |
| TOM BOSENKO, *et al.*, | |
| Defendants. | |

Michael Aaron Jayne, who is confined in the Shasta County Jail in Redding, California, has filed a *pro se* complaint under 42 U.S.C. § 1983. (Dkt. # 1). Currently before the Court are Jayne's four Motions for Temporary Injunctive Relief. (Dkt. #s 27, 29, 34, and 59). The Court ordered Defendants to respond to Jayne's first three motions on July 9, 2010. (Dkt. # 41). Defendants Anderson, Ashmun, Bosenko, Champagne, Gonzalez, Heyde, Joiner, Meek, Mitchel, Penland, and Van Buskirk ("Shasta County Defendants") jointly opposed these three motions on July 26, 2010. (Dkt. # 47). Defendant Abney joined the Shasta County Defendants' opposition on July 26, 2010. (Dkt. # 52). While the first three motions were pending, Jayne filed his fourth Motion for Temporary Injunctive Relief on September 17, 2010. (Dkt. # 59). The Shasta County Defendants answered that motion on October 4, 2010. (Dkt. # 64). For the following reasons, the Court denies Jayne's first three Motions for Temporary Injunctive Relief (Dkt. #s 27, 29, and 34), denies in part in fourth Motion

for Temporary Injunctive Relief (Dkt. # 59), and orders Defendants to respond to Jayne's allegations in his fourth motion regarding "soft sole shoes."

## I. Factual and Procedural Background

Jayne filed this civil rights complaint on November 18, 2008. (Dkt. # 1). He alleges that Defendants engaged in "an active conspiracy to violate [his] civil rights and to harass and torture [him]" while he was housed at the Shasta County Jail as a pretrial detainee. (*Id.*, at 3). On November 23, 2009, the Court screened Jayne's complaint and ordered Defendants to answer. (Dkt. # 19). The Defendants answered on June 11, 2010 and July 7, 2010. (Dkt. #s 31, 33, and 39).

## II. Plaintiff's Requests for Injunctive Relief

### A. The March 19, 2010 Motion (Dkt. # 27)

In his first Motion for Temporary Injunctive Relief (Dkt. # 27), Jayne complained of the following conduct by Defendants:

1. Defendants Ashmun, Bosenko, and Van Buskirk conspired to place Jayne in administrative segregation ("AD-SEG") and remove his unit's television. (Dkt. # 27, at 1).

2. Defendants Ashmun and Van Buskirk refuse to release Jayne from shackles during his time in the recreation yard. (*Id.*, at 2).

3. Defendants Ashmun and Van Buskirk serve his meals on a styrofoam tray instead of a standard-issue hard tray. (*Id.*).

4. Defendants keep Jayne in solitary confinement. (*Id.*).

5. Defendants Ashmun, Bosenko, and Van Buskirk have not replaced Jayne's mattress. (*Id.*).

6. Defendants prevent Jayne from speaking to his attorney privately by recording and monitoring his calls. (*Id.*, at 3).

7. Defendants provide Jayne with insufficient food. (*Id.*).

### B. The April 19, 2010 Motion (Dkt. # 29)

In his second Motion for Temporary Injunctive Relief (Dkt. # 29), Jayne repeated allegations 1, 2, and 7 from the first motion, and sought injunctive relief for the following additional conduct:

1. Defendants Champagne and Van Buskirk allow Jayne only 20 to 30 minutes of shower time and deny him use of an electric razor in his cell. (*Id.*).

2. Defendant Champagne limits Jayne's access to "inmate request forms." (*Id.*, at 3).

3. Defendants Champagne and Van Buskirk force Jayne to meet with his attorney in a room with "a thick cage barrier," thereby restricting his physical access to counsel. (*Id.*).

4. Defendant Champagne ignored Jayne's ankle injuries and filed a falsified medical report. (*Id.*)

5. Defendant Van Buskirk does not provide adequate clothing. (*Id.*, at 4).

6. Defendant Champagne charged money from Jayne's prison "canteen account" to pay for Jayne's "copies to the courts." (*Id.*).

7. Defendants Bosenko and Van Buskirk tell Jayne that he does not have the right to file a "citizen complaint" pursuant to Cal. Penal Code § 832.5. (*Id.*).

8. Defendant Van Buskirk refuses to provide Jayne with a free eye exam and eyeglasses for his upcoming criminal trial. (*Id.*, at 5).

**C.   The June 23, 2010 Motion (Dkt. # 34)**

In his third Motion for Temporary Injunctive Relief (Dkt. # 34), Jayne repeats many of the allegations from the first two motions and seeks injunctive relief for the following additional conduct:

1. Defendant Ashmun ordered Jayne transported from Oregon by paddy wagon on hard seats. (Dkt. # 34, at 2).

2. Defendants Ashmun and Van Buskirk retaliate against Jayne by placing him in AD-SEG, engaging in systematic sensory deprivation, and allowing living standards that "are federally illegal to [Jayne's] protected rights." (*Id.,* at 3).

3. Defendants Ashmun and Van Buskirk oversee 24 hour video monitoring of Jayne's cell, recording everything he does, including using the restroom and speaking with his attorney on the telephone. (*Id.* at 3–4).

4. Defendant Van Buskirk left Jayne in solitary confinement for seven days. (*Id.*)

5. Defendant Johnson administered "depracoat" and "dioxapine" to Jayne. These medications "have made Jayne ill with lethargic and nausea feeling dizzy and disoriented." (*Id.* at 4–5).

- 3 -

    6.    Defendants refuse to provide Jayne with medication to treat his "anxiety condition and insomnia." (*Id.* at 5).

### D. The September 17, 2010 Motion (Dkt. # 59)

In his fourth Motion for Temporary Injunctive Relief (Dkt. # 59), Jayne seeks injunctive relief for the following conduct:

    1.    Defendant Van Buskirk retaliated against Jayne by assigning a "sexual violent predator inmate" in the cell adjacent to Jayne. (Dkt. # 59, at 2).

    2.    Defendants tolerate the actions of this inmate, who throws water and urine under Jayne's cell door as well as blood and spit on Jayne's glass window. (*Id.*)

    3.    Defendant Van Buskirk arbitrarily searches Jayne's cell. (*Id.* at 3).

    4.    Correctional Officer Pender confiscated the "soft sole shoes" and extra mattress given to Jayne by an unnamed guard. (*Id.*)

    5.    Defendant Van Buskirk ordered David Yorten to disclose "confidential Defense work product" to the Shasta County prosecutor's office. (*Id.* at 4).

## III. Discussion

### A. Standard of Review

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A party seeking a temporary injunctive relief must either establish a likelihood of success on the merits, a likelihood of irreparable injury if injunctive relief is not granted, a balance of hardships favoring the movant, and an advancement of the public interest, *see Winter v. Natural Res. Def. Council*, --- U.S. ----, 129 S. Ct. 365, 374 (2008) (internal citations omitted), or demonstrate that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, --- F.3d ----, 2010 WL 3665149, at *8 (9th Cir. Sept. 22, 2010) (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)).

B. **Moot Claims**

The Court finds that some of Jayne's complaints are now moot due to the actions of prison officials. In his fourth Motion for Temporary Injunctive Relief, Jayne admits that Defendants have "taken [Jayne] off of chains in the rec. yard" and have "provided a T.V. to [Jayne] in his pod." (Dkt. # 59, at 2). Similarly, Defendants point out that as of July 2010, Jayne has received his meals on a hard tray by virtue of his compliance with prison disciplinary rules. (Dkt. # 47, at 7; *see also* Dkt. # 51, at 3). Finally, pursuant to an order by Shasta County Superior Court Judge Cara Beatty, Defendants have provided Jayne with an eye examination and eyeglasses at the county's expense. (Dkt. # 47, at 9; *see also* Dkt. # 50, at 4).

Additional, some of the other relief Jayne requests is no longer available. As discussed above, a preliminary injunction provides only for *prospective* relief. And yet, it is clear that for much of what Jayne complains, prospective relief is simply unavailable. For example, Jayne's claim that Defendant Champagne wrongly withdrew funds from Jayne's "canteen account" to pay for court copies is not the subject of preliminary injunctive relief. Likewise, Jayne's transfer from Oregon to Shasta County Jail by paddy wagon is complete, thereby rendering Jayne's request for injunctive relief moot.

Accordingly, the Court denies as moot Jayne's requests for injunctive relief related to (1) the television in his AD-SEG pod; (2) shackles on the exercise yard; (3) eye examination; (4) improper withdrawal of "canteen account" funds; and (5) transport by paddy wagon.

C. **Claims Found in the Complaint**

Only four of Jayne's requests for temporary injunctive relief overlap with claims in his screened complaint: (1) Defendants' improper monitoring and/or recording of conversations between Jayne and his attorney; (2) Defendants' failure to provide Jayne with sufficient nourishment; (3) Defendants' failure to provide Jayne with adequate clothing; and (4) Defendants' indifference to Jayne's anxiety disorder.

1. <u>Recording and/or videotaping of attorney phone calls</u>

Jayne alleged in his complaint that Defendants surreptitiously recorded his telephone calls with his attorney. (Dkt. # 1, at 5). Here, Jayne does not allege that Defendants continue to record his telephone conversations with his attorney, but he does complain that Defendants videotape all of his actions—including phone calls with his attorney. (Dkt. # 34, at 3–4). Jayne argues that this practice violates his expectation of privacy because Defendants can discern what he is saying to his attorney by reviewing the videotapes. (*Id.*). Defendants argue that their 24-hour video surveillance of Jayne is justified because of the danger Jayne poses to prison staff and himself. (Dkt. # 47, at 6–7). Defendants state that they do not record any audio as part of the surveillance. (*Id.*) Furthermore, Defendants note that they provide screens for Jayne's privacy and do not require him to face the camera when speaking to his attorney. (*Id.*; *see also* Dkt. # 51, at 3–4).

The Court assumes, without deciding, that Jayne pleaded this allegation in his complaint. Although prisoners do not have a general expectation of private phone calls, *see United States v. Monghur,* 576 F.3d 1008, 1011 (9th Cir. 2009), the Ninth Circuit has suggested that a prisoner may have an expectation of privacy during a telephone call with his or her attorney. *See United States v. Van Poyck*, 77 F.3d 285, 291 n. 9 (9th Cir. 1996). But Jayne has not shown a likelihood of success on the merits of this claim. Defendants have provided ample justification for their decision to videotape Jayne (*See* Dkt. # 51, at 3–4; *id.*, Ex. A), and there is no refutation of their evidence that the conversations themselves are protected from detection. Accordingly, the Court denies this portion of Jayne's motions.

2. <u>Insufficient Food</u>

Jayne complains that the jail's food is insufficient, (*See* Dkt. # 27, at 3; Dkt. # 29, at 4; Dkt. # 34, at 6), arguing that his daily calorie intake—"3 spoons oatmeal, 1 milk, 1 piece of fruit, 5 spoons of main course for breakfast, 1 sandwich, 1 piece of fruit, 1 milk for lunch"—falls below 1,000 calories per day. (Dkt. # 27, at 3). Jayne

alleges that he received three times the amount of food in Oregon's prison system, which he argues demonstrates the inadequacy of the food he currently receives. (*Id.*). Defendants respond that Jayne is provided the same meals as other inmates, that these meals comply with California regulations, and that a dietician reviews the inmates' menu. (Dkt. # 47, at 8; Dkt. # 51, at 4).

Even assuming that Jayne's request for temporary injunctive relief was properly plead in his complaint,[1] he has not met any of the *Winter* factors. *See* 129 S. Ct. at 374. Although "[a]dequate food is a basic human need protected by the Eighth Amendment," *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)), *amended by* 135 F.3d 1318 (9th Cir. 1998), Jayne has not met his burden of showing a likelihood of success on the merits of this claim — that is, that the food he receives is so deficient that it gives rise to a violation of the Eighth Amendment. Accordingly, the Court denies this portion of Jayne's motions.

### 3. Inadequate Clothing

Jayne seeks injunctive relief for (1) Defendant Van Buskirk's refusal "to afford sweatshirts and jackets in cold weather," (Dkt. # 29, at 4), and (2) Defendants' refusal to provide him with "soft sole shoes." (Dkt. # 34, at 6). Jayne pled both of these claims in his complaint, (Dkt. # 1, at 4, 10), and the Court found that he adequately stated a claim in the November 23, 2009 screening order. (Dkt. # 19, at 10). Defendants argue that Jayne receives the same clothing as any other inmate. (Dkt. # 47, at 8). The only difference is that, due to Jayne's high security level, he receives

---

[1] Jayne alleges in his complaint that Defendant Ashmun forced him to eat "disciplinary loaf" for at least one month, resulting in severe weight loss. (Dkt. # 1, at 4). Here, Jayne does not complain about disciplinary food, but instead seeks an increase in serving size of the jail's normal fare. As Jayne admits is no longer served disciplinary loaf (Dkt. # 27, at 3), there is no basis for a preliminary injunction with regard to it.

- 7 -

a single set of clothing each day through the "food port" in his cell door. (Dkt. # 51, Ex. D).

"The denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994) (citing *Ray*, 682 F.2d at 1246). When determining if inadequate clothing rises to the level of a constitutional violation, a court must consider the weather conditions at the time, any pain inflicted by the clothing restriction, and the clothing that is in fact available to the inmate at the time. *Id.*

Once more, Jayne has not demonstrated that Defendant Van Buskirk's refusal to provide warmer clothing, even if true, rises to the level of a constitutional violation. Jayne does not state that his lack of warmer clothing poses a health danger, or causes him pain or severe discomfort, and would likely have a difficult time so proving, as it appears he has the same clothing as the other detainees. None of the *Winter* factors are met, and the Court therefore denies this portion of Jayne's motion.

Similarly, Jayne has failed to justify an injunction with respect to his request for "soft sole shoes," at least in his first three motions. In his fourth Motion for Temporary Injunctive Relief, however, Jayne alleges that Defendants confiscated the "soft sole shoes" he had previously received from an unnamed guard. (Dkt. # 59, at 3). Taken together, Jayne appears to allege that the lack of "soft sole shoes" caused him pain, and that these shoes could have been provided to him. If true, these allegations *may* provide an adequate basis for a preliminary injunction. *See Walker*, 14 F.3d at 1421. The Court will, therefore, hold this portion of Jayne's fourth motion in abeyance. Defendants are directed to respond to this portion of Jayne's fourth motion no later than twenty-one (21) days from the date of this order.

    4.    <u>Indifference to Jayne's Anxiety Disorder</u>

Jayne seeks injunctive relief for Defendant Dr. Johnson's treatment of his anxiety disorder. (Dkt. # 34, at 3–4). In essence, Jayne seeks an injunction ordering Dr. Johnson to provide him with a prescription for benzodiazepines. (*Id.*). Further,

Jayne implies that he does not want to receive Doexpin or Depakote as part of his treatment regime because of adverse side effects. (*Id.*). Dr. Johnson states in his declaration that benzodiazepines are powerful barbiturates used for "short-term treatment of anxiety, insomnia, acute seizures, sedation in hospitals, and sedation of aggressive patients." (Dkt. # 48, at 5). These drugs are highly addictive and therefore recommended only for short-term use. (*Id.*). Based on his analysis of Jayne's neurological condition, Dr. Johnson refused to prescribe Ativan, a benzodiazepine, on an "as-needed" basis as Jayne requested. (*Id.*, at 6). Instead, Dr. Johnson offered Jayne two treatment options: Doexpin, an antidepressant, and a limited treatment regimen on Depakote, a drug used to treat bipolar disorder. (*Id.*, at 4). Jayne reluctantly accepted Dr. Johnson's treatment options before renewing his request for "benzos"; when rebuffed, he refused further Doexpin treatment. (*Id.*).

Here again, Jayne has not shown likelihood of success on the merits, much less the other three *Winter* factors. To demonstrate deliberate medical indifference, a plaintiff must show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006) (citations omitted). There is no indication that Dr. Johnson has been indifferent to Jayne's medical needs. Jayne's repeated requests for a powerful sedative do not demonstrate likelihood of success on the merits, especially considering Dr. Johnson's medical opinion that benzodiazepines like Ativan are not appropriate for open-ended, "as-needed" indications. A prisoner's disagreement with the medical care he is receiving, without more, does not give rise to an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Accordingly, the Court denies this portion of Jayne's motions.

### D. Remaining Claims

Preliminary injunctive relief is meant to maintain the status quo of the action before a decision on the merits. *Camenisch*, 451 U.S. at 395. Jayne's remaining claims are entirely new and contained nowhere in the complaint. Jayne's unrelated

allegations do not affect the status quo of the claims in his complaint, and Jayne is not permitted to bootstrap new allegations into this case by way of a motion for a preliminary injunction. The Court therefore denies the remainder of Jayne's motions for temporary injunctive relief.

**Accordingly, IT IS HEREBY ORDERED** that:

1. Plaintiff's first Motion for Temporary Injunctive Relief (Dkt. # 27) is **DENIED.**
2. Plaintiff's second Motion for Temporary Injunctive Relief (Dkt. # 29) is **DENIED**.
3. Plaintiff's third Motion for Temporary Injunctive Relief (Dkt. # 34) is **DENIED**.
4. Plaintiff's fourth Motion for Temporary Injunctive Relief (Dkt. # 59) is **DENIED IN PART**.
5. Defendants shall respond to Jayne's fourth Motion for Temporary Injunctive Relief (Dkt. # 59), insofar as it relates to his allegations regarding "soft sole shoes," no later than twenty-one (21) days from the date of this order.

DATED this 24th day of November, 2010.

/s/ Marsha S. Berzon

MARSHA S. BERZON
United States Circuit Judge, sitting by designation